IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZEBRA TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>PLANAR SYSTEMS, INC.,<br><br>Defendant. | Case No.<br><br>Hon. |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Zebra Technologies Corporation ("Zebra"), by and through its undersigned counsel, alleges the following as and for its Complaint against Defendant, Planar Systems, Inc. ("Planar").

**NATURE OF THE ACTION**

1. This action arises from the widespread failure of approximately 2,030 defective video monitors manufactured by Planar and sold to the Enterprise business unit of Motorola Solutions, Inc. ("Enterprise"), which Zebra acquired from Motorola Solutions on October 27, 2014 (excluding its iDEN, or Integrated Digital Enhanced Network business). These monitors – which Enterprise integrated into kiosk-style store displays to be sold to its own customer – began failing soon after deployment in late 2014, and by early 2015 these monitors were unusable.

2. Planar acknowledged that its monitors were defective and initially made efforts to remedy the defects. However, in March of 2015, Planar suddenly reversed course and has since refused to provide any assistance to Enterprise and Zebra. Planar also refused to reimburse Zebra for Zebra's mounting losses arising from the need to procure replacement monitors and honor the expectations of its customer.

**THE PARTIES**

3. Zebra is a corporation organized under the laws of Delaware with its principal place of business located in Lincolnshire, Illinois. Zebra develops and implements tracking technology and solutions for use in a variety of industries, including healthcare, retail, manufacturing, transportation, and hospitality. Zebra's products give its customers real-time visibility into everything from products and physical assets to people. On October 27, 2014, Zebra acquired Enterprise, which until that date – and at all times relevant to this Complaint – was a Delaware corporation with its principal place of business located in Schaumburg, Illinois.

4. On information and belief, Planar is a corporation organized under the laws of Delaware with its principal place of business located in Beaverton, Oregon. On information and belief, Planar is principally engaged in the production and sale of commercial display technology products, such as monitors, that are specifically designed to meet Planar's customers' particular application needs.

**JURISDICTION AND VENUE**

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, excluding interest and costs, and because this civil action is between citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred within this district.

**GENERAL ALLEGATIONS**

7. In late 2012, representatives of Enterprise and Planar began preliminary discussions about a proposed transaction by which Planar would sell to Enterprise approximately 2,000-2,500 monitors for customized use in kiosk-style display units that Enterprise would then

sell to its own customer, who would be placing the kiosk units in its retail stores for customer use.

8. Given the unique needs of Enterprise's customer and Enterprise's intended application for these monitors (the "Planar Monitors"), over the next several months Enterprise and Planar representatives discussed specifications for the Planar Monitors in a series of written communications and during numerous teleconferences.

9. During these negotiations and discussions, Planar held itself out as having knowledge and expertise in the provision of commercial display technology products that were customized for specific uses, such as the Planar Monitors.

10. Planar assured Enterprise orally and in writing that it understood Enterprise's particular needs for the Planar Monitors, including the manner in which Enterprise would be incorporating the Planar Monitors into kiosk display units to be sold to Enterprise's customer.

11. Planar assured Enterprise orally and in writing that the Planar Monitors would be customized to meet Enterprise's particular needs, and that the Planar Monitors would be suitable for Enterprise's intended use in incorporating the monitors into the kiosk display units. In particular, Planar assured Enterprise that the Planar Monitors would be suitable for high-volume use in public areas such as retail stores, and that the failure rate of these monitors would be less than 1%.

12. Planar also assured Enterprise orally and in writing that the Planar Monitors were designed to last for at least 30,000-50,000 hours.

13. In early 2013, in reliance on Planar's assurances and purported expertise in selecting the right monitors for the job, Enterprise agreed on terms for the purchase of the Planar

Monitors at issue. Enterprise issued a purchase order for the Planar Monitors on or about May 17, 2013.

14. At Planar's instruction, Enterprise issued its purchase order for the Planar Monitors to Planar's distributor, Avnet, Inc. ("Avnet"), whom Enterprise paid in full. On information and belief, Avnet, as Planar's distributor, in turn made payment to Planar corresponding to this transaction.

15. Avnet stated to Enterprise that the warranties applicable to the Planar Monitors would be any warranties extended by the manufacturer, Planar.

16. Meanwhile, Enterprise separately contracted with its customer for the sale and service of Enterprise's kiosk display units (which would incorporate the Planar Monitors), which were to be deployed in the Enterprise customer's retail stores.

17. Between June 2013 and August 2013, the Planar Monitors were shipped to Enterprise's facility in Illinois, after which they were incorporated into the kiosk-style store displays for Enterprise's customer.

18. In or around November 2013, Enterprise began deploying the kiosk display units in its customer's retail stores.

19. By October 2014, the Planar Monitors were experiencing significant failures. Namely, the image quality of the Planar Monitors degraded quickly and severely, to the point that they were rendered useless for their intended application in the Enterprise customer's kiosk store displays.

20. The Enterprise customer requested that Enterprise remedy the problem. Enterprise, in turn, notified Planar of the failures and requested Planar's assistance.

21. By late 2014, it was apparent that the failures being experienced in the Planar Monitors was epidemic – that is, nearly all of the Planar Monitors had experienced or were experiencing the same severe and premature image degradation.

22. Initially, in late 2014 and early 2015, Planar worked with Enterprise, and then Zebra, to troubleshoot and attempt to remedy the defective Planar Monitors. Planar acknowledged the monitors' failure, apologized for the inconvenience, and promised that Planar's management and engineering teams would support Zebra in whatever capacity necessary in order to solve the problems.

23. At one point Planar shipped 230 replacement monitors to Zebra at no cost. However, it was quickly apparent that these replacement monitors suffered from the same flaw as the original Planar Monitors.

24. Planar admitted that the Planar Monitors were defective and suffering from premature failures.

25. In March 2015, after several months of attempting to correct the defects in its monitors, Planar abruptly stopped cooperating with Zebra (which by then had acquired Enterprise). Planar refused to make any further attempts to remedy the situation. Instead, Planar adopted the position that it had no further responsibility to provide any assistance whatsoever to Zebra or to Zebra's customer.

26. As a result of Planar's sudden disclaimer of responsibility, and in order to fulfill its obligations to its customer, Zebra was forced to purchase replacement monitors from a substitute vendor.

27. Zebra has spent in excess of $1.2 million, and invested a considerable amount of time and energy, in attempting to correct the malfunctioning kiosks at its customer's stores. This

sum includes amounts spent by Zebra to purchase new monitors from the substitute vendor and to embark on a program of retrofitting kiosks with the new monitors.

28.     In light of the Planar Monitors' defects and premature failures, Zebra requested that Planar reimburse it for its expenses in remedying the situation.

29.     Planar refused Zebra's request.

## COUNT I

### Breach of Express Warranty

30.     Zebra hereby incorporates by reference paragraphs 1 through 29 above as and for this paragraph 30.

31.     Planar expressly warranted that it had knowledge and expertise in the production of custom commercial display technology products, such as the Planar Monitors.

32.     Planar expressly warranted that it understood Enterprise's particular needs for the Planar Monitors and the manner in which Enterprise would incorporate the Planar Monitors into kiosk display units for its customer.

33.     Planar expressly warranted that the Planar Monitors would be customized to meet Enterprise's particular needs, and that the Planar Monitors would be suitable for Enterprise's intended use in incorporating the monitors into the kiosk display units.

34.     Planar expressly warranted that the Planar Monitors would be free of defects and that Planar would work with Enterprise to satisfactorily resolve any defects that did occur.

35.     Planar expressly warranted that the Planar Monitors would have a failure rate of less than 1%.

36.     Planar expressly warranted that the Planar Monitors were designed to last for at least 30,000-50,000 hours.

37. In reliance on Planar's express warranties and representations, Enterprise purchased the Planar Monitors through Avnet, who acted as Planar's agent and stated that it would pass on to Enterprise all warranties extended by Planar.

38. The Planar Monitors suffered from significant defects. The Planar Monitors experienced severe and premature image degradation, rendering the Planar Monitors useless.

39. The Planar Monitors were not suitable for Enterprise's intended use and were not suitable for use in high-volume public areas.

40. The Planar Monitors had a failure rate well in excess of 1%.

41. The Planar Monitors lasted nowhere near 30,000-50,000 hours.

42. Planar refused to work with Enterprise and Zebra to satisfactorily resolve the defects in the Planar Monitors.

43. Planar refused to reimburse Enterprise and Zebra for expenses incurred as a result of the defective Planar Monitors.

44. Planar breached its express warranties to Enterprise and Zebra.

45. As a result of Planar's breaches of express warranty, Zebra has been damaged in an amount exceeding $1,000,000.

## COUNT II

### Breach of Implied Warranty

46. Zebra hereby incorporates by reference paragraphs 1 through 45 above as and for this paragraph 46.

47. Following months of negotiations and discussions about the particular intended use and specifications for the Planar Monitors, Planar instructed Enterprise to purchase the Planar Monitors through Planar's distributor, Avnet.

48. Planar impliedly warranted that the Planar Monitors were fit for their intended purpose in that they would be suitable for incorporating into the kiosk-style display units that Enterprise would be selling to its customer.

49. Planar impliedly warranted that the Planar Monitors were of merchantable quality.

50. Planar knew that Enterprise intended to incorporate the Planar Monitors into kiosk-style display units to be sold to Enterprise's customer.

51. Planar knew that Enterprise was relying on Planar's purported expertise and skill in customizing the Planar Monitors for Enterprise's particular intended use.

52. Enterprise relied on Planar's purported expertise and skill in customizing the Planar Monitors for Enterprise's particular intended use.

53. The Planar Monitors suffered from significant defects and were not suitable for Enterprise's particular intended use.

54. The Planar Monitors were not of good or merchantable quality. The Planar Monitors were of poor quality, did not function properly, and were not fit for the ordinary purposes for which monitors are used.

55. The Planar Monitors experienced severe and premature image degradation.

56. Enterprise and Zebra notified Planar of the Planar Monitors' severe and premature failure.

57. Planar refused to work with Enterprise and Zebra to satisfactorily resolve the defects in the Planar Monitors.

58. Planar breached the implied warranties of fitness and merchantability.

59. As a result of Planar's breaches of the implied warranties of fitness and merchantability, Zebra has been damaged in an amount exceeding $1,000,000.

## COUNT III

### Breach of Contract

60. Zebra hereby incorporates by reference paragraphs 1 through 59 above as and for this paragraph 60.

61. Planar offered to sell the customized Planar Monitors to Enterprise through Planar's distributor, Avnet. Planar promised that the Planar Monitors would be free from defects and would be suitable for Enterprise's intended use, and that Planar would resolve any defects that occurred.

62. In reliance on Planar's many assurances, representations, and warranties discussed above, Enterprise accepted Planar's offer and purchased the Planar Monitors through Avnet, thereby consummating a valid and binding contract between Enterprise and Planar.

63. Enterprise paid Avnet in full for its purchase of the Planar Monitors and otherwise performed all of Enterprise's obligations under its agreement to purchase the Planar Monitors.

64. On information and belief, Avnet remitted payment to Planar corresponding to Enterprise's purchase of the Planar Monitors.

65. After the Planar Monitors began prematurely failing, Planar again promised to work with Enterprise to satisfactorily resolve the defects in the Planar Monitors.

66. Planar failed to provide Enterprise with monitors that were free from defects.

67. Planar failed to provide Enterprise with monitors that did not prematurely fail.

68. Planar failed to provide Enterprise with monitors that were suitable for Enterprise's particular intended purpose.

69. Planar failed to provide Enterprise with monitors that were fit for re-sale in Enterprise's kiosk display units or that otherwise complied with the many representations of quality given by Planar.

70. Planar failed to work with Enterprise and Zebra to satisfactorily resolve the defects in the Planar Monitors.

71. Planar has refused Zebra's requests for assistance and reimbursement following the Planar Monitors' failure.

72. Planar has breached the terms of its contract with Enterprise.

73. As a result of Planar's breaches, Zebra has been damaged in an amount exceeding $1,000,000.

## COUNT IV

### Promissory Estoppel (In the Alternative to Count III)

74. Zebra hereby incorporates by reference paragraphs 1 through 59 as and for this paragraph 74.

75. Planar promised Enterprise that it had knowledge and expertise in the production of custom commercial display technology products, such as the Planar Monitors.

76. Planar promised Enterprise that it understood Enterprise's particular needs for the Planar Monitors and the manner in which Enterprise would incorporate the Planar Monitors into kiosk display units for its customer.

77. Planar promised Enterprise that the Planar Monitors would be customized to meet Enterprise's particular needs, and that the Planar Monitors would be suitable for Enterprise's intended use in incorporating the monitors into the kiosk display units.

78. Planar promised Enterprise that the Planar Monitors would be free of defects and suitable for Enterprise's particular intended use. Planar also promised Enterprise that Planar would work with Enterprise to satisfactorily resolve any defects that did occur.

79. Planar promised Enterprise that the Planar Monitors would have a failure rate of less than 1%.

80. Planar promised Enterprise that the Planar Monitors were designed to last for at least 30,000-50,000 hours.

81. Planar made the aforementioned promises in order to induce Enterprise to purchase the Planar Monitors.

82. Enterprise relied on Planar's promises in agreeing to purchase the Planar Monitors, and Enterprise did in fact purchase the Planar Monitors in reliance on Planar's promises.

83. Enterprise's reliance on Planar's promises was reasonable and justified.

84. Enterprise's reliance on Planar's promises in purchasing the Planar Monitors was to its detriment because the Planar Monitors suffered from severe defects and failed prematurely, because Planar failed to live up to its promise to remedy the defects that occurred in the Planar Monitors, and because Zebra has incurred over $1,000,000 in damages resulting from the Planar Monitors' failure and Planar's conduct.

## COUNT V

### Unjust Enrichment (In the Alternative to Count III)

85. Zebra hereby incorporates by reference paragraphs 1 through 59 and 74 through 84 as and for this paragraph 85.

86. On information and belief, Planar received a financial payment from its distributor, Avnet, directly associated with Enterprise's purchase of the Planar Monitors.

87. Accordingly, Enterprise conferred a financial benefit on Planar by purchasing the Planar Monitors through Avnet.

88. On information and belief, Planar has retained the benefit conferred on it by virtue of Enterprise's purchase of the Planar Monitors.

89. Planar has been unjustly enriched by the revenues and financial benefit associated with Enterprise's purchase of the Planar Monitors.

90. Owing to the Planar Monitors' defects, including their severe and premature image degradation, Enterprise has not received any benefit from the transaction.

91. Enterprise would not have purchased the Planar Monitors if Enterprise had known of their defects or their predisposition toward severe and premature image degradation.

92. It would be inequitable for Planar to retain the revenues and financial benefit associated with Enterprise's purchase of the Planar Monitors. Allowing Planar to retain that benefit would violate principles of justice and good conscience.

**RELIEF DEMANDED**

93. WHEREFORE, Zebra respectfully requests that this Court enter judgment in its favor and against Planar as follows:

    (a) Awarding Zebra damages in an amount to be determined at trial, but in no event less than $1,000,000;

    (b) Awarding Zebra restitution of all amounts inequitably retained by Planar as a result of Enterprise's purchase of the defective Planar Monitors;

    (c) Awarding Zebra prejudgment interest;

    (d) Awarding Zebra its costs of suit and reasonable attorneys' fees; and

  (e)  Awarding Zebra such further relief deemed just and proper.

## JURY DEMAND

Zebra hereby demands a trial by jury on all issues triable to a jury.

Dated: September 1, 2015       Respectfully submitted,

                */James M. Reiland/*
                David A. Rammelt
                (drammelt@reedsmith.com)
                James M. Reiland
                (jreiland@reedsmith.com)
                **Reed Smith LLP**
                10 South Wacker Drive, Suite 4000
                Chicago, Illinois 60606
                Tel.: (312) 207-1000
                Fax: (312) 207-6400

                *Attorneys for Zebra Technologies Corporation*